# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> STELLA ROSS, <br><br> Defendant. | No. CR24-4071-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This matter is before me on a Report and Recommendation (R&R) (Doc. 42) in which the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge, recommends that I deny defendant Stella Ross' motion (Doc. 37) to dismiss the indictment, which charges her with assaulting a federal officer, in violation of 18 U.S.C. §§ 111(a)(1) and (b) (Count 1), and influencing a federal official by threat in violation of 18 U.S.C. §§ 115(a)(1)(B) and (b)(1)(A)(iv) (Count 2). Ross has filed timely objections (Doc. 45) and the Government has filed a response (Doc. 46).

## II. APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. DISCUSSION

#### A. Summary of R&R

Judge Mahoney provided the following relevant background in her R&R:

> Defendant Stella Ross is alleged to have assaulted a security guard working at the Social Security Administration. The indictment charges her with assaulting a federal officer in violation of 18 U.S.C. § 111 (Count 1) and influencing a federal official by threat in violation of 18 U.S.C. § 115 (Count 2). Doc. 10. The alleged victim worked for a private company that contracts with the federal government to provide security for the Social Security Administration. Ross moves to dismiss the indictment against her because the victim is a contract employee, rather than a government employee. Ross argues that for a victim to qualify as "assisting" a federal

> "officer or employee in the performance of [official] duties" (for purposes of 18 U.S.C. § 1114, referenced by both § 111 and § 115), the victim must be assisting a specific federal employee, rather than assisting a federal agency in general. Ross also argues that the "assistance" clause of § 1114 is not incorporated into § 115, since it applies only to *officials* whose killings would be a crime under § 1114.

Doc. 42 at 1. With regard to whether "assisting" applies to only a specific federal employee, or may include a federal agency in general, Judge Mahoney considered *United States v. Washington*, 79 F.4th 320, 327-38 (3d Cir. 2023), in which the Third Circuit held that the evidence at trial was insufficient to show the victim was assisting an individual federal employee. She observed that *Washington* offered little usefulness in deciding the issue at hand because it did not consider whether assistance to an agency in general could support a conviction – a theory the prosecution had expressly disclaimed. *Washington*, 79 F.4th at 327.

Judge Mahoney instead relied on *United States v. Feola*, 420 U.S. 671, 679, 684 (1975), in which the Supreme Court recognized that Congress intended for § 111 "to protect both federal officers and federal functions." Based on this precedent, she noted the Eighth Circuit has held that "§ 111 . . . applies to state officers who are performing federal functions under a contract, whether or not federal personnel are present." *United States v. Luedtke*, 771 F.3d 453, 455 (8th Cir. 2014). She concluded the same reasoning applies to private-sector employees – by "performing a federal function under contract, they qualify as persons assisting federal officers." *Id.* As such, she recommends denying Ross' motion to dismiss as it relates to the § 111 charge (Count 1).

With regard to the § 115 charge (Count 2), Judge Mahoney observed that § 115 applies when the victim is "an official whose killing would be a crime under" § 1114. Section 1114 references:

> any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the

performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance.

18 U.S.C. § 1114(a). She then considered Ross' argument that because the statute uses the term "official" as opposed to "person" (like § 111), § 115 does not incorporate all victims covered by § 1114. In other words, "official" applies only to federal officers and employees, not those assisting federal officers and employees.

Judge Mahoney noted that the Eighth Circuit considered a related argument in *United States v. Wynn*, 827 F.3d 778, 783-85 (8th Cir. 2016), which was whether § 115's use of "official" meant that only federal "officers" under § 1114 could be victims, rather than federal "employees." The *Wynn* court relied on *United States v. Bankoff*, 613 F.3d 358 (3d Cir. 2010), which looked at the legislative history and noted that when Congress enacted § 115 in 1984, § 1114 covered "a long list of federal personnel." When Congress amended § 1114 in 1996 to its current language, it used a catch-all to replace the lengthy list, which expanded the definition of victim to include any federal officer, federal employee, or person assisting them. The *Wynn* court concluded that nothing in the legislative history indicated that "Congress intended to change, or to clarify, the fundamental relationship between § 115(a)(1)(B) and § 1114." *Id.* at 5 (quoting *Wynn*, 827 F.3d at 784-84). Judge Mahoney explained that both the *Bankoff* and *Wynn* courts concluded that in light of this history, the term "official" in § 115 was not used as a term of limitation, but as a general term to incorporate by reference all individuals protected under § 1114. Doc. 42 at 4-5.

She also considered *United States v. Anderson*, 46 F.4th 1000, 1007 (9th Cir. 2022), in which the court considered whether the incorporation of persons described in § 1114 included those "assisting an officer or employee with their official duties."[1] While the majority answered "yes" to that question, she also discussed the dissent, which relied on the plain language of the statute rather than its history and concluded that those

---

[1] *Anderson* involved a private contractor, similar to the victim in this case.

assisting federal officers and employees are assisting federal officials, not federal officials themselves. *Id*. at 5. Because the Eighth Circuit has already analyzed the statute and relied on its history, Judge Mahoney agreed with the majority opinion in *Anderson* that the reasoning in *Bankoff* and *Wynn* applies with equal force to those who are victims under § 1114 by nature of their assistance to federal officers and employees. *Id*. at 6. As such, she recommends denying Ross' motion to dismiss as it relates to the § 115 charge (Count 2).

### B. Ross' Objections
#### 1. Count 1

Count 1 is based on § 111(a)(1) which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere "with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties." Section 1114 designates:

> any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance.

Ross argues Count 1 should be dismissed based on *Washington*, which she contends does not contradict the Eighth Circuit precedent discussed in the R&R. Those cases involved questions of whether a state employee qualifies as a person assisting a federal officer. *See United States v. Luedtke*, 771 F.3d 453 (8th Cir. 2014); *United States v. Burrage*, 75 F.4th 953 (8th Cir. 2023); *United States v. Roy*, 408 F.3d 484 (8th Cir. 2005). In *Roy*, there was statutory authority by which the state police officer was considered a federal employee for purposes of §§ 111 and 1114. *Roy*, 408 F.3d at 487-88 (citing 25 U.S.C. § 2804(f)(1)(B)). In *Luedtke* and *Burrage*, the state officers were acting pursuant to an intergovernmental contract to perform a federal function and "assist" a federal officer for purposes § 111. *Luedtke*, 771 F.3d at 455. Here, there was neither an

5

intergovernmental contract nor similar statutory authority for a private contract employee to fall within the scope of protected persons for purposes of § 111.

Ross focuses on *Washington*, which is factually analogous to this case as it involved a private security officer (PSO) working for the Federal Protective Service (FPS). In *Washington*, the court concluded that "[t]he language of §§ 111 and 1114 calls for a connection between the person assisted and his performance of an official duty." *Washington*, 79 F.4th at 327. The court held that there was insufficient evidence that the contracted PSOs were assisting FPS officers in their official duties. The court noted that unnamed FPS officers were responsible for training contractors in baton use, firearm qualifications, and using on-site equipment like x-ray machines and there was no evidence that the contracted PSOs were assisting these officers in performing such duties. *Id.* at 328. As for the named FPS officer, there was no evidence as to his official duties.

The court noted that, at best, the evidence showed the contracted PSOs were assisting the FPS, an argument that the Government specifically disavowed as its theory of liability. The court stated: "Without a record of [the contracted PSOs] assisting a specific person performing official duties, we cannot affirm the conviction. We thus conclude that the government failed to prove at trial that [the contracted PSOs] were assaulted while assisting specific federal officers or employees in the performance of their official duties." *Washington*, 79 F.4th at 328. While Ross acknowledges that the court did not consider whether assistance to a federal agency, in general, could establish liability under § 111, she argues I should follow *Washington* because, unlike the relevant Eighth Circuit cases, the victim here did not have a delegation of authority from FPS and was not a state government or federal government employee, but a private contractor.

While the factual distinctions are notable, they were not the focus of the analysis in the R&R. Rather the R&R focused on *Feola*, in which the Supreme Court recognized that Congress intended for § 111 "to protect both federal officers and federal functions." *Feola*, 420 U.S. at 679. Because the PSO was "performing a federal function under contract" Judge Mahoney concluded the PSO qualified as a person assisting federal

6

officers. *Luedtke*, 771 F.3d at 455. Ross does not address this "federal function" basis of the R&R, except to argue that the victims in the Eighth Circuit cases were performing a specific federal function, which qualified them as "assisting federal officers" because they were serving the same function as a federal officer.

While I agree that the Eighth Circuit cases can be distinguished factually based on the victim's status, the Eighth Circuit did not expressly rely on that status in deciding those cases, instead focusing on the federal function. *See Luedtke*, 771 F.3d at 455 ("Since [the state officers] were performing a federal function under contract, they qualify as persons assisting federal officers under § 111."); *Burrage*, 75 F.4th at 958 ("A reasonable jury could have found that Officer Pierce was assisting the United States Marshals Service in its duty to provide for the safekeeping of federal detainees."); *Roy*, 408 F.3d at 491 ("Van Roekel was undoubtedly performing a federal function – the provision of law enforcement services on Indian land – at the time of the incident, and thus he was entitled to federal officer status as a threshold matter."). Ross does not argue that the PSO in this case was not performing a federal function. Rather she argues that the PSO was not acting pursuant to an intergovernmental contract or explicit statutory authority. Those are not elements or conditions under §§ 111 or 1114. Because there is no dispute that the victim was performing a federal function, I agree with Judge Mahoney's recommendation to deny Ross' motion to dismiss as it relates to the § 111 charge. Ross' objections as to Count 1 are overruled.

### 2. Count 2

For Count 2, Ross similarly focuses on factual distinctions in the cases cited in the R&R. While the R&R relied on the legal analysis in *Wynn*, Ross points out that *Wynn* involved a federal employee rather than a private contractor.

Section 115(a)(1)(B) states:

> Whoever . . . threatens to assault, kidnap, or murder a United States official, a United States judge, a Federal law enforcement officer, or an

7

> official whose killing would be a crime under such section [18 U.S.C. § 1114] . . . with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

18 U.S.C. § 115(a)(1)(B). Those identified in § 1114 include:

> any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance.

18 U.S.C. § 1114(a).

In determining whether the federal employee was a protected "official" under § 115(a)(1)(B) in *Wynn*, the Eighth Circuit relied on *Bankoff*. *Bankoff* determined that § 115 incorporates by reference all persons covered by § 1114, not just the officers or employees mentioned therein. *See Bankoff*, 613 F.3d at 370 ("when § 115's reference to an 'official whose killing would be a crime under' § 1114 is read in context, the meaning is plain; 'official' is not used as a term of limitation, but as a general term that incorporates by reference all the individuals protected under § 1114, both 'officer[s] and employee[s].'"). As observed by Ross, *Bankoff* found "significant that § 115 defines the first three categories of covered persons but provides no definition for the fourth category. This strongly suggests that Congress intended for § 1114 itself to define that category by incorporating it by reference in § 115." *Id.* at 366. *Wynn* relied on this reasoning to likewise conclude that the second use of the term "official" in § 115 is not a term which limits those described within § 1114. *Wynn*, 827 F.3d at 785. Because *Wynn* and *Bankoff* involved victims who were federal employees, Ross argues that the recognized expansion only goes that far – that the second use of "official" does not limit federal employees from protection under § 115. She contends that whether that expansion

8

encompasses a private contractor is not answered by *Wynn* or *Bankoff* and the court should conclude that a private party (such as a PSO) is not covered by § 115.

Ross relies on the dissent in *United States v. Anderson*, 46 F.4th 1000 (9th Cir. 2022), which involved a PSO and in which the majority concluded even those assisting federal officials or employees are included in the persons that Congress sought to protect in § 115. Both the dissent and majority opinions discussed *Bankoff* and *Wynn*. The dissent focused on the victim at issue in those cases, noting the question before those courts was whether a federal "employee" is a federal "official" within the meaning of § 115(a)(1)(B). *See Anderson*, 46 F.4th at 1012 (Fletcher, J. dissenting). The majority focused on the logic of those cases as well as the legislative history. *Id.* at 1007-09. Ross encourages the court to frame the question as "not whether the double-use of 'official' in § 115 limits the protected parties in § 1114 by excluding federal employees who are threatened because they are not themselves federal officials" but "whether the statute extends 'official' to those 'assisting such an officer or employee in the performance of such duties' when that assisting party is not themselves a federal employee or officer." Doc. 45 at 17.

The problem with Ross' argument is that the Eighth Circuit, in *Wynn*, has already addressed the question of how much of § 1114 is incorporated into § 115(a)(1)(B). While federal employees are included, it did not limit its agreement with *Bankoff* only to that extent. As Judge Mahoney explained, the Eighth Circuit has already relied on the statute's history and *Bankoff*'s analysis to conclude that use of the term "official" in § 115 is not a term of limitation, but a general term that incorporates all victims under § 1114. Because the *Wynn* court did not find any limitations with regard to § 1114's reference, I agree with Judge Mahoney that the analysis in *Wynn* forecloses Ross' argument, even if the precise holding does not. Ross' objections related to Count 2 are overruled.

9

## IV. CONCLUSION

For the reasons set forth herein:

1. Ross' objections (Doc. 45) to the Report and Recommendation (Doc. 42) are **overruled** and I hereby **accept** the Report and Recommendation without modification. *See* 28 U.S.C. § 636(b)(1).

2. Pursuant to Judge Mahoney's recommendation, Ross' motion (Doc. 37) to dismiss the indictment is **denied**.

**IT IS SO ORDERED** this 7th day of March, 2025.

_____
Leonard T. Strand
United States District Judge